IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Northern Division

JOSHUA MELES
2905 Fallstaff Road, Apt. #41
Baltimore, MD 21209

    *Plaintiff*,

    v.                                  Civil Action No.  1:14-cv-2461

**CITY OF BALTIMORE**
<u>SERVE:</u>
GEORGE NILSON,
CITY SOLICITOR                         **JURY TRIAL DEMANDED**
City of Baltimore Department of Law
Central Bureau of Investigation
Suite 101
100 N. Holliday Street
Baltimore, Maryland 21202

    *Defendant*.

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Joshua Meles, by and through his attorneys, Jay P. Holland and Joseph M. Creed, and the law firm of Joseph, Greenwald & Laake, P.A., and brings this civil suit against Defendant, City of Baltimore, in the District of Maryland, and as cause states the following:

### NATURE OF THIS ACTION

1.      This is an action pursuant to 42 U.S.C. § 2000(e) *et seq.*, ("Title VII"), alleging discriminatory treatment and retaliation against Plaintiff throughout his employment as an Engineer III for the City of Baltimore, Department of General Services ("the City").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under and pursuant to 28 U.S.C. §

1331.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. The unlawful

employment practices alleged herein were committed in Baltimore City, and acts and omissions

giving rise to this action occurred in Baltimore City.

4.     Plaintiff exhausted all applicable administrative remedies by timely filing a

charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or

around November 14, 2012. He received a Right to Sue Letter from the EEOC, Charge No. 531-

2013-00293, on May 7, 2014 and brings this action against Defendant for compensatory

damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

5.     Mr. Meles has satisfied the requirements under Md. Code Ann. Cts. & Jud. Proc.

§5-301, *et seq.* and though he does not concede notice is required, provided notice of his claim to

Baltimore City on or around February 27, 2013.


## PARTIES

6.     The Plaintiff, Joshua Meles, is an adult, Orthodox Jew and resident of Maryland,

who suffers from a documented auditory disability.

7.     Plaintiff is the proper plaintiff in this matter as he was an "employee" of

Defendant, as the term is defined in 42 USC § 2000e(f), from July 12, 2012 to September 5,

2012, which includes all times relevant herein.

8.     Defendant is a municipal corporation organized under the provisions of Art. XI-A

of the Maryland Constitution. At all relevant times, the City of Baltimore employed Joshua

Meles.

9.      Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b) and at all times employed Marwan Alkarajet and Mike Cook as Mr. Meles' supervisors. At all relevant times, Mr. Alkarajet and Mr. Cook acted within the scope of their employment.

## FACTS COMMON TO ALL CLAIMS

10.     Plaintiff was employed as an Engineer III with the City of Baltimore, Department of General Services from July 12, 2012 until his unlawful termination on September 5, 2012.

11.     Plaintiff was supervised by Marwan Alkarajet and Mike Cook ("Supervisors").

12.     Plaintiff frequently contacted Terrika Burns, human resources representative, regarding his Supervisors' harassing and discriminatory behavior.

13.     Prior to accepting employment with the City, Plaintiff spoke with Ms. Burns on the phone, and Ms. Burns stated it was "extremely rare" for an engineer to be terminated, even during the probationary period, and that the engineer would have to have done something very wrong in order to warrant termination.

14.     The City had knowledge that Plaintiff was an Orthodox Jew since Plaintiff wore a yarmulke to work, and he asked for a religious accommodation to observe religious holidays.

15.     The City was aware of Plaintiff's disability. Plaintiff disclosed to Ms. Burns that he suffers from a documented auditory disability resulting in his need to correspond through email instead of by phone. Plaintiff specifically told Ms. Burns that having his Supervisors respond to his emails would be a reasonable accommodation for his disability.

16.     Plaintiff was performing his job duties satisfactorily for the entire duration of his employment. Furthermore, despite numerous meetings and requests for feedback, at no point did Mr. Meles receive formal criticism or warnings indicating performance deficiencies.

17.     Mr. Meles was well qualified for the Engineer III position he held with the City.

18.     Defendant City by Ms. Burns was made aware of Mr. Meles' documented auditory disability.

19.     In a continued pattern of discrimination, and failure to provide reasonable accommodations, Ms. Burns dismissed Plaintiff's disability, and stated he only needed an accommodation because "[he is] a millennium child . . . [and] that [he] works at a different style."

20.     Mr. Meles was capable and qualified to perform all the duties of his job for the City as an Engineer III, including, *inter alia*, drafting plumbing, fire protection, and building systems, using specified software, and applying building specifications through drawings and templates for drawings. Above and beyond this, even when the City failed to provide Mr. Meles sprinkler hydrauulic software or template drawings, Mr. Meles performed his duties satisfactorily by completing hydraulic calculations by hand and drafting drawings, including abbreviations and symbols for certain building systems, from scratch.

21.     Throughout his employment, Plaintiff was subjected to his Supervisors' discriminatory animus on the basis of his religion and disability, and Plaintiff experienced retaliation culminating in the termination of his employment under the pretext of poor work performance.

22.     Other than continued harassment by his Supervisors, Plaintiff never received any formal feedback or reviews of his performance, despite several emails from Plaintiff to Supervisors requesting constructive criticism. The Supervisors never gave Plaintiff any actual warning, verbally or in writing, of any potential adverse employment action, let alone termination.

23.     Plaintiff was denied the opportunity for professional development by the City's decision not to allow him to attend training programs, and by assigning him excessive and unfavorable work assignments, and terminating his employment under the pretext of poor work performance.

24.     Plaintiff sought constructive feedback on his work performance, and at Plaintiff's request, he met with this Supervisors on three occasions.

25.     During each of the three meetings, however, the Supervisors mistreated and harassed Plaintiff by repeatedly threatening him with termination, reminding him of his probationary status, and adding excessive and intolerable obligations to his workload, which included tasks outside of Plaintiff's area of expertise. Plaintiff was often forced to work without City codes, building specifications, basic software, or information required to create proposals and designs for his engineering assignments. He often made requests for these and other standard materials and specifications required for his line of work, but his Supervisors ignored these requests.

26.     On August 22, 2012, Plaintiff emailed Ms. Terrika Burns, Human Resources Representative, and complained about being subjected to workplace harassment by his Supervisors. In the email, he stated that he felt Mr. Alkarajet and Mr. Cook were using his probationary period as a scare tactic, and that he was being tasked with an overwhelming amount of engineering and specialized contract work that is very much beyond any single engineer's capabilities.

27.     In the email, Plaintiff stated, "I do not want to be bullied," and advised Ms. Burns of his intent to file a workplace harassment claim against his Supervisors. Plaintiff additionally requested that Ms. Burns provide the appropriate paperwork for him to file a workplace

harassment complaint.

28.     Before Mr. Meles could even file a written complaint, Ms. Burns summarily dismissed Plaintiff's complaint of being subjected to religious and disability discrimination and retaliation by his Supervisors.

29.     Ms. Burns refused to provide Mr. Meles with the appropriate paperwork he needed to file a written workplace harassment claim.

30.     Instead, Ms. Burns warned Mr. Meles that although his Supervisors "did not comment on [his] work," they were upset by Plaintiff's protected conduct in complaining to Ms. Burns about their behavior.

31.     In effect, instead of remedying the workplace harassment and discrimination that Mr. Meles complained of to human resources, Ms. Burns further aggravated the situation and enabled an environment of retaliation by informing the Supervisors' of Mr. Meles' complaint of workplace harassment against them.

32.     At no time did Ms. Burns provide Mr. Meles with any appropriate forms to receive Mr. Meles' written complaint of discrimination and retaliation. Further, other than disclosing Mr. Meles' intent to file such a complaint with her by email to his Supervisors, Ms. Burns made no acknowledgment of Mr. Meles' complaint of workplace discrimination and retaliation.

33.     On August 29, 2012, Plaintiff emailed his Supervisors and Ms. Burns, and requested a reasonable religious accommodation in order to observe then-upcoming Jewish holidays. Plaintiff asked for time off to observe the holidays, and offered to either make up the time or take unpaid leave.

34.     Plaintiff did not receive a response to this email.

35.     On September 4, 2012, Plaintiff approached his supervisor Mr. Alkarajet about the lack of response to his request for time off to celebrate and observe Jewish holidays, and Mr. Alkarajet told Plaintiff to file a formal request.

36.     Upon the instruction of Mr. Alkarajet nearly a week after his original request, Mr. Meles proceeded to file a formal request for days off of work.

37.     In spite of the City's and Mr. Meles' Supervisors' clear knowledge of Mr. Meles' intent to request time off for the then-upcoming Jewish holiday, on September 5, 2012, one day following Plaintiff's formal request for a religious accommodation, Mr. Meles' Supervisors informed him that he was terminated from his employment with the City effective September 6, 2012.

38.     The City then called security, gave him 10 minutes to vacate the premises, and threatened him with arrest if he was not finished packing his belongings within the 10 minutes.

39.     Plaintiff used this time to forward email communications to Ms. Burns since the content further evidenced the discriminatory animus that Plaintiff had been subjected to by his Supervisors.

40.     A security guard then escorted Mr. Meles out through the rear exit of the building, where he was forced to wait with the security guard until his ride arrived to pick him up.

41.     After being escorted from the office, the guards then threatened Plaintiff with arrest if he ever returned to the premises.

42.     There was no need for security to watch Mr. Meles as he packed his personal belongings from his office or to escort him out of the building. His Supervisors contacted security anyway.

43.     Plaintiff's demeanor did not warrant such hostile and harassing behavior as he

remained stoic and collected upon learning of his termination.  The use of security guards was unnecessary and only intended to further humiliate and embarrass him.

44.     Mr. Meles was humiliated in front of his colleagues when he was escorted out of the building by security and threatened with arrest.

45.     Before he was terminated, the City did not provide Mr. Meles with any notice of its intent to terminate him or warning of its decision to recommend such action. Mr. Meles' termination was an act of retaliation by his Supervisors for requesting an accommodation for his documented disability, for requesting religious accommodation for days off for Jewish holidays, and for complaining about his Supervisors for their discriminatory conduct.

46.     In further retaliation, the City did not abide by their rules, regulations, and policies regarding the termination of employees.

47.     For example, after informing Mr. Meles of his termination, the Supervisors unsuccessfully tried to persuade Mr. Meles into signing a false and negative work evaluation regarding his performance.

48.     Yet when Plaintiff inquired as to the basis for termination, poor work performance was not cited as an issue. Mr. Meles' Supervisors merely stated that Plaintiff could be fired "for any reason."

49.     Human Resources failed to address the issues of discrimination and retaliation raised by Plaintiff during the course of his employment, and upon his termination, ignored all further communications from Plaintiff.

50.     No member of the Defendant City's HR ever met with Plaintiff before, during, or after his termination, and Ms. Burns ignored Plaintiff's requests for information.  Plaintiff did not receive a response to an email sent to Ms. Burns on September 5, 2012, inquiring about

termination paperwork.

51.     Defendant owed Plaintiff a duty to protect him from his Supervisors, including Marwan Alkarajet and Mike Cook, who it knew or should have known were fostering discriminatory and retaliatory working conditions.  Plaintiff raised the issues of discrimination (religious and disability) and retaliation with Ms. Burns.

52.     Plaintiff engaged in protected activity when he complained to Ms. Burns about his Supervisors' constant harassment and retaliation. Ms. Burns did nothing to remedy the behavior, and instead informed the Supervisors of Plaintiff's complaints, thus further enabling an environment of discrimination, harassment, and retaliation toward Mr. Meles.

53.     Plaintiff's complaints were further ignored, and the retaliation grew worse, with his Supervisors setting unreasonably high work expectations, and ultimately terminating his employment and having him publicly removed from the office by guards, and threatened with arrest.

54.     Prior to Plaintiff's termination, there were no documents or meetings relating to Plaintiff's alleged poor work performance.

55.     Defendant had sufficient notice that its employees, including but not limited to Mr. Alkarajet, Mr. Cook, and Ms. Burns violated Title VII of the Civil Rights Act of 1964.

56.     Defendant breached its duty to Plaintiff by failing to supervise the behavior of Mr. Alkarajet and Mr. Cook, failing to separate Plaintiff from these individuals, despite the fact that Defendant knew or should have known that his Supervisors were harassing Plaintiff because of his religion and disability, and engaging in retaliatory acts against him.

57.     The Supervisors' conduct was offensive, threatening, and demeaning. Plaintiff complained to Ms. Burns that he felt he was being bullied and that his Supervisors were

engaging in scare tactics with him that were heightened, particularly after they learned of his attempt and  intent to file a written complaint against them for discriminatory conduct.

58.     The discriminatory and retaliating behavior in Plaintiff's work environment resulted in Plaintiff being ostracized. This was further demonstrated when Ms. Burns summarily dismissed Plaintiff's complaints without conducting any investigation, and when Ms. Burns disclosed Mr. Meles' intent to file a written complaint about the discriminatory conduct he reasonably believed he was suffering, with his Supervisors.

59.     The Supervisors' discriminatory refusals in providing Mr. Meles with the necessary materials for him to complete assignments and their unreasonably high work expectations adversely affected the conditions of Mr. Meles' employment by altering his ability to perform the extraordinarily high work tasks expected of him.

60.     Plaintiff's religion and his practice of it as an Orthodox Jew was a motivating factor in Defendant's decision to discriminate against Plaintiff.

61.     Plaintiff's documented auditory disability was a motivating factor in Defendant's decision to discriminate against Plaintiff.

62.     Plaintiff's prior protected activity was a motivating factor in Defendant's decision to discriminate against Plaintiff.

63.     Defendant failed to properly investigate, discipline or otherwise prevent the conduct alleged above.

64.     Had Mr. Meles not been an Orthodox Jew, had not notified Ms. Burns of his documented auditory disability, and had not complained against his Supervisors for discriminatory conduct, the Defendant City, by and through its employees and supervisors including Ms. Burns, Mr. Alkarajet, and Mr. Cook would not have adversely changed the terms

and conditions of his employment by increasing his work load and refusing to provide him with standard codes and specifications; would not have refused to accommodate Mr. Meles' documented auditory disability; would not have ignored his requests for time off to observe religious holidays; or terminated Mr. Meles in retaliation for engaging in protected activity.

65.     Plaintiff was terminated as an employee just days after requesting time off for religious holidays by email and just one day after submitting a request for the religious accommodation to observe religious holidays on the very form his Supervisors required.

66.     Defendant City of Baltimore had knowledge of Mr. Meles' disability, through Ms. Burns and Mr. Meles' Supervisors. Yet, Defendant City failed to make reasonable accommodations for the documented auditory disability. Plaintiff apprised Ms. Burns of his disability, and the need for a reasonable accommodation—corresponding through email instead of by voice. Ms. Burns dismissed the disability, stating Plaintiff only needed an accommodation because "[he is] a millennium child…[and] that [he] works at a different style."

67.     In addition, even when Mr. Meles specifically requested meetings with his Supervisors to discuss his work performance, his Supervisors subjected him to mistreatment and harassment with repeated threats of termination, reminders of his probationary status, and added excessive and intolerable obligations to his workload, which were outside Plaintiff's area of expertise.

68.     Specifically, his Supervisors intentionally created a work environment designed for Plaintiff to fail. Mr. Meles was not provided codes, software, or any information—including specifications for drawings—required to create proposals and designs. His requests for specifications and standard materials required to complete assignments were ignored.

69.     Furthermore, when Mr. Meles complained to Ms. Burns about the harassment and

discrimination he had been experiencing, Ms. Burns dismissed the complaints. Instead of conducting any investigation or providing Mr. Meles the opportunity to file a written workplace harassment claim against his Supervisors as he had requested, Ms. Burn's alerted his Supervisors of his intent to file a workplace harassment claim against them, a fact she noted they received personally and in response to which they made no remarks about his performance.

70.    Moreover, when on August 29, 2012, Mr. Meles emailed his Supervisors and Ms. Burns requesting a reasonable religious accommodation in order to observe upcoming Jewish holidays, neither his Supervisors nor Ms. Burns responded.

71.    When on September 4, 2012, Plaintiff followed up his previous request for time off to observe religious holidays by filing the appropriate form, just one day later, he was notified that he was terminated immediately.

72.    The City's retaliatory conduct did not end with Mr. Meles' termination; his Supervisors not only attempted to have him sign a post-termination negative performance evaluation, but then when Mr. Meles refused, called security, who needlessly threatened Mr. Meles with arrest and escorted him out of the building, all to Mr. Meles' public shame and humiliation.

73.    The City also refused to provide Mr. Meles a letter of termination, even upon his request for one.

74.    Mr. Meles' position as an Engineer III for the Department of General Services was not eliminated. On October 2, 2012, his former position was posted on the City's jobs website.

75.    The above conduct has significantly inhibited Plaintiff's career advancement as a City employee and with other potential employers.

76.     On November 14, 2012, Plaintiff filed a timely complaint with the EEOC and stated the cause for discrimination based on religion, disability, and retaliation.

77.     On May 7, 2014, Mr. Meles received the EEOC-issued Notice of Right To Sue, permitting Plaintiff to file suit in this matter in Federal Court.

## COUNT I
## RELIGIOUS DISCRIMINATION
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

78.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

79.     By virtue of the acts described above, Defendant discriminated against Plaintiff because of his religion in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 19642.

80.     As a result of Defendant City's actions described above, Plaintiff has suffered harm, including but not limited to lost wages, loss of confidence, humiliation, shame, and ongoing mental anguish, pain, and suffering.

WHEREFORE, Plaintiff Meles demands judgment against Defendant City of Baltimore, for an amount to be determined at trial but not less than one million dollars ($1,000,000.00) in compensatory damages, plus interest, and costs.  Plaintiff Meles also demands his attorney's fees and any further and additional relief as the nature of the case may require and which this Honorable Court may deem just and proper.

## COUNT II
## DISABILITY DISCRIMINATION
## FAILURE TO REASONABLY ACCOMMODATE
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

81.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

82.     By virtue of the acts described above, Defendant City discriminated against Mr. Meles because of his disability in violation of 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1964.

83.     Defendant City, by and through Ms. Burns, was made aware of Mr. Meles' documented auditory disability.

84.     As a result of his documented auditory disability, Mr. Meles required a reasonable accommodation to communicate by email instead of vocally.

85.     Nevertheless, not only did the City ignore this reasonable accommodation request, but the City's Supervisors continued to berate and threaten Mr. Meles during meetings rather than providing Mr. Meles any feedback related to his work product and Ms. Burns dismissed Mr. Meles' need for a reasonable accommodation by blaming his request on her alleged perception of his being a "millennial."

86.     The City failed to provide Mr. Meles with reasonable accommodation for his documented auditory disability, or even engage in the process of discussing the accommodations needed.

87.     As a result of Defendant City's actions described above, Plaintiff has suffered harm, including but not limited to lost wages, loss of confidence, humiliation, shame, and ongoing mental anguish, pain, and suffering.

WHEREFORE, Plaintiff Meles demands judgment against Defendant City of Baltimore, for an amount to be determined at trial but not less than one million dollars ($1,000,000.00) in compensatory damages, plus interest, and costs.  Plaintiff Meles also demands his attorney's fees and any further and additional relief as the nature of the case may require and which this Honorable Court may deem just and proper.

## COUNT III
## RETALIATION
### 42 U.S.C. §§ 2000e *et. seq.*, Title VII of the Civil Rights Act of 1964

88.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

89.     By virtue of the acts described above, Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, by retaliating against Plaintiff for his protected activity in complaining to Human Resources about his Supervisors' discriminatory behavior.

90.     As a result of the Defendant City's actions described above, Plaintiff has suffered harm, including but not limited to lost wages, loss of confidence, humiliation, shame, and ongoing mental anguish, pain, and suffering.

WHEREFORE, Plaintiff Meles demands judgment against Defendant City of Baltimore, for an amount to be determined at trial but not less than one million dollars ($1,000,000.00) in compensatory damages, plus interest, and costs.  Plaintiff Meles also demands his attorney's fees and any further and additional relief as the nature of the case may require and which this Honorable Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.


Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.


_____/s/_____
Jay P. Holland, Federal Bar No. 06015
Joseph M. Creed, Federal Bar No. 17134
6404 Ivy Lane
Suite 400

Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
jholland@jgllaw.com
jcreed@jgllaw.com
*Counsel for Plaintiff*